All rise. Hear ye, hear ye, hear ye. This honorable appellate court, the second district is back in session. Pursuant to adjourn, the Honorable Anne Brackley. Please proceed. People versus Stephen Smith on the head of the on behalf of people, Mr Scott Jacobs will saturate. Proceed. You may proceed when you are ready. Thank you. Mhm. Morning hours. Please, the court. I believe the case which controls the outcome of this appeal is the Illinois Supreme Court's decision of people versus Cosby. After rereading the facts of this case and the briefs, I've come to the conclusion that the trial court erroneously relied on people versus Gonzalez, which was overruled by Harrison Cosby on that. Ultimately, that this was a consensual search pursuant to Cosby rationale. Well, the defendant's testimony was that he withdrew his consent. He spoke to his brother, communicated that to the officer, the other officer who didn't testify and said, tell him to stop the search. I want to leave. That's correct. That's what the defendant testified to. The only problem with that is that the trial court gave neither officer race the action of the defendant's testimony to seal approval. If the trial court testimony is this is the credibility of determination that was before the truthful testimony. That's a withdrawal of consent. And the defendant and his passengers are entitled and should be allowed to leave. Correct. I would agree if the trial court had found the defense account more critical. But yes, that would be the case. The problem that I have with that is the trial court appeared to accept both versions of what occurred. The state was also free to call the missing officer and rebuttal to rebut that testimony. But they didn't do that. Officer, you with respect to Officer Whitaker, Whitaker. Yes, Whitaker did not testify. Was there an explanation at the trial court levels for why Whitaker wasn't? I don't I don't know of any. I don't know why Officer Raker didn't testify. Um, I do know that Officer Raciak obviously did testify, um, that his account is discrepant with the defendants is, you know, that may mean something that may not. But the trial court adopted neither version. Well, how do you explain it? Didn't the trial court sort of implicitly don't adapt the defense version because his findings with limited day are sort of credited the defendant's testimony? I don't I don't believe that's implicit in the trial for expanding. I mean, to me, the trial court made the determination pursuant to Gonzalez that the officer had broadened the scope of the stuff prior to any sort of conversation or prior to the encounter where reset hands the defendant back his ticket and tells him he's free to leave. Raciak's testimony was that he when he initially began the search, um, he observed what he believed to be cannabis on the floor, but not a sufficient amount to collect and so continue to search, looking for more drugs. Apparently correct. Yes. Isn't that doesn't that establish problem cause for prolonged detention to wait even if the defendant would try to withdraw his consent? I would absolutely agree that it does. Um, I mean, at that point in time, certainly, um, I mean, to me, that that's probably the critical factor in which this case should be decided. Uh, there was never any testimony to rebut Officer Raciak's the issue about defendant provoking his consent occur, at least his consent for Raciak to search the vehicle while the defendant insisted that a canine could do a walk around the vehicle. Um, I mean, at that point, you're right, Officer Raciak did have probable cause. And that was on the record. Nobody challenged it. Nobody challenged it. Uh, actually, Officer Officer Barron canine officer and corroborated at least Raciak's account of it because she had recalled some conversation, I believe, with the defendant's son about their having a joint smoked in the vehicle, which would, in my mind, corroborate the idea that there is cannabis in the floorboards. But on balance, I think the trial court didn't make any of those determinations because, in my mind, it was caught up in the Gonzalez rationale, not Cosby, which came out prior to this case. Simply put, I don't know why the trial court made the decision that it did. But because we rationale is very clear. I mean, once the officer hands back the ticket, the defendant's free to consent to the search. In this situation, to the extent that we're even talking about consent, and I would urge this court to decide the issue and probable cause alone. But to the extent that we're talking about consent at this point in time, if you look at Officer Raciak's testimony, the defendant's statements are simply bizarre enough that they could be believed. I mean, it's very unusual for an officer to testify that he hands back the ticket and that he asked for consent to search, and the defendant doubles down on the request. Not only does he grant consent to search, he says, you can search and you can get a dog if you want to. I would submit that at that point, any Terry Stopp inquiry is certainly satisfied. He's saying it's so bizarre it has to be true. It would seem that way as I mean, I think we can all agree that that's a fairly unusual detail. And then, when Raciak goes towards the vehicle before, the defendant sort of admonishes him that, you know, he thought he had covered this ground, that the canine was free to search the vehicle and not Raciak. I mean, in any there was probable cause, but there was certainly consent to search here. The trial court's finding was not a factual finding that the defendant didn't consent. It was that the atmosphere was coercive, that Raciak lacked a justification for broadening the scope of the stop. I mean, the trial court didn't decide this on probable cause or consent. None of the men in all factors applied to this step, correct? Absolutely. And it's uncontested. The defendant himself testified that he provided verbal consent. Yes, but he refused to provide written consent. Yes, the defense, uh, the Avalon or the Avali rather makes a big case about that. I would submit that the fact the defendant didn't want to memorialize his consent does not mean he did not consent. It wasn't his car. Um, that's correct. It was his wife's. But the state didn't challenge standing or reasonable expectation. No, no, we do not. Also, at the time, the defendant allegedly gave the consent. He was not. He had not been placed under arrest. He was not handcuffed. He was not in his car, wasn't correct. What was your video of the stop? I believe there was, but it was destroyed prior to trial because it didn't involve a D. Y. There was never an issue about the destruction of that video. No defense ever tell. We still have to find there was a valid consent because that's what gets the original officer into the car in the first place to see cannabis floorboards. Correct. Correct. I mean, at that point in time, though, what's unusual to me is that both the defendant's and the officer's testimony corroborate each other on the same account. I mean, the defendant had consented to a search of the vehicle initially, right? Yes. And he limited the scope of his consent, but he nevertheless consented once the limitation was, um, after the police officer had already been in the car and those observations. Yes. Correct. So, I mean, in effect, there was nothing preventable. There was nothing to extinguish probable cause. In this case, the officer provide the defendant with a consent to search for him. The officer testified that he did. Um, the defendant said that the defendant refused to sign it because it was his wife's vehicle. The defendant said that he had never been provided a consent to search for him. So I would submit that that's a it's in your analogy of bizarre statements that must be true of them. I get the theme of your argument. Well, no, I mean, it's sort of like a statement against interest. I mean, it's one of those things that you know, better off taking the officer's assertion instead of saying that. Yeah, I Yeah, I mean, but to me, that's that's a factual issue for the trial court to resolve. And the trial court did not resolve that issue because it was caught up in the notion that the subsequent that the subsequent questioning had to be related to the initial scope of the stop. I mean, that was explicitly analysis. Yes, you don't dispute. You would not dispute even more recent cases that suggest that a police officer cannot unduly prolong the traffic stop for the sole purpose of using that establish some probable cause for detention for further detention. In other words, absent probable cause, you can't take a traffic stop and turn it to, uh, you know, 20 minute, 30 minute wait for a dog to arrive. I agree that you could not do that without the defendant's consent. But I would submit to you that, like in Cosby, this defendant consented. It was not an unreasonable prolonging of the stop because the defendant told the police had there been some conversation, some exchange between the officer and the defendant after the stop where the defendant initially said, No, I don't want you to search. I want to take my warning ticket and leave. The officer could not detain him for further conversation. Correct? Correct. Absolutely. But as you point out, that didn't happen in this case. If there are no further questions, I would submit that at the time the officer had problem. The officer had defendant's consent to search his vehicle. He developed probable cause and fairly reasonable suspicion to detain the defendant. And for all these reasons, we ask you reverse the order of the circuit court. Council. May please support the council. Good morning, Your Honor's. My name is Bruce Kirkman. I represent the appellee, Mr Steven Smith. Justice Burkett, I'd like to write to your first question. This question of probable cause discovered during the search. I would encourage the court to go back and testimony of Mr Smith and Mr Racing where Mr Smith's answers can be to the questions of counsel at the suppression hearing can be interpreted as he, as soon as Officer Raciak asking if he could search the car, the defendant got on the phone with his brother who said, You don't have to stay there. You could leave. At which point, the defendant testified. He said, Stop the search. I that before he began searching the car, he removed the two passengers from the car, performed a frisk and that took him 10 minutes to perform those frisks. So some, according to the officer's own testimony, there's a 10 minute period between the time of the little consent and the time he actually began the search of the car. He went in and saw what he describes. It's him. He thought it was campus on the floor, right? So? So I don't think it's as clear cut as the state would make it that it happened in rapid succession and that the withdrawal of consent by the defendant occurred after he saw that after he saw that. So that's not as clear. That's not as clear as the state would like it to be. It's what you're saying. It's not. And I think the key is Officer Raciak's own testimony. The evidence taken in the most favorable to the state. But there was a 10 minute gap in there, coupled with the defendant's testimony that he immediately called his brother immediately. Upon conclusion of that phone conversation, he said, Stop the search. I never leave. Well, the defendant had the burden of proof, correct? And he had. Yes, it was his motion. But was there any evidence produced as to the timeline to dispute the officer's testimony? For example, phone records showing what time he called vis a vis the radio communications and checking on the driver's license. Was there any evidence of that offer? There was evidence of of timeline. I recall that it primarily concerned. When did you call the canine officer? How long did it take the canine officer to arrive? Um, you know, I think a trial counsel on behalf of the defendant was trying to establish that the traffic stop itself was unreasonably prolonged. But I can see the brief pretty much. And I agree with counsel that this is a Cosby case where the defendant received back his paperwork and the officer told him and the defendant admits he was told he could leave the scene. So that makes it a Cosby analysis. Those traffic stop is over. Then you look at whether he was there was a second seizure upon completion of that. So I'm not sure that the timeline is presented at the hearing regarding how long it took the canine officer to get there is as relevant as it is. It would seem to be when you consider the case as a withdrawal of consent to search. Well, it doesn't make sense anyway that somebody would say stop the search, but I'll wait for the dog. Why won't somebody just say stop the search? I'm leaving. According to the defendant, that's what he said. Um, you know, racing access. I confirmed that he don't know what the conversation was. You didn't detail what exactly did you say to the defendant? Because I believe the initial consent was an answer by the defendant. According to the officer, the initial consent was you can search. You can even get a canine if you want to purely speculating that we don't know what the officer said when he went back and talking. You might have said, Would you rather wait for the canine? We just don't know the answer to that. But I think that that 10 minute period is important, and it for the initiation of the search. Was there any ostensible reason for the gap? Wasn't there a testimony that he kept the passenger in the driver of the car depressed at the search? Is that unreasonable? Well, you do. The officer doesn't have the right to ask people who like from the car and traffic stuff, right? I don't I don't dispute that at all. If he's going to search the car, he wants to get the gap wasn't totally unexplained, was it? It wasn't unexplained. My only point is that if you read the gap in conjunction with the defendant's testimony that he gave verbal consent immediately called his brother and immediately said, Stop the search. Did anyone even ask the defendant how long that took? No, no. So we have the officer's guesstimate that it was 10 minutes versus no testimony by the defendant. But just because he wasn't asked. I mean, I think we can infer from the defendant's answer, though, that it was a relatively short conversation because he recounts the conversation. I said to my brother this, he said to me this. And then I said, Stop the search. The recounting of the conversation, according to the defendant's testimony, certainly would have been less than 10 minutes. But the trial court made no factual findings. No, no. I, you know, I know that the trial court was aware or had been asked to rule in this case as a Cosby analysis, because that's what the state argued in its closing summary. The prosecutor of the trial court said, you know, find this to be a Cosby analysis and find that the traffic stop was ended. So I think you can read the judge's ruling. It's consistent with the Cosby analysis. He said, Well, the defendant was seized. There wasn't a reason to keep them at the scene. He was seized after the conclusion of the traffic subsidy. So it was over. But it really wasn't over because of the actions of the officer, which constituted a second seizure. The trial court made no findings, as was alluded to, on the credibility of the witnesses. Correct? No, but I think that no, no, he didn't. He just issued his ruling. How does it help your side of the case? The defendant? Excuse me. The trial court ruled in favor of the defendant based on his testimony at the hearing. I mean, the judge doesn't specify. I find this to be true. It's not true. I believe this person, not this person. But I think that you can conclude from the fact that the trial court ruled on behalf of the defendant granted the motion that he found those facts favorable to the defendant to be true. Well, the trial court made a mistake of law as well. He thought that the traffic stop itself continued when, in reality, under Cosby, the traffic stop concludes. Would you agree with the return of the driver's license, proof of insurance and the issuance of the warning ticket? The stop is over, correct? That's correct. That's the problem. That was the problem. The trial court made a serious mistake of law. I wouldn't give the trial court. I wouldn't be quite so harsh on my assessment of the trial court's ruling. I think it's consistent with the Cosby analysis. It sensibly was over, but it wasn't really because he was seized again. I think you can read the judge's comments in a way that is consistent with Cosby. I don't think it was just a flat out. So his understanding ruling is that the there was never really any break. Is that what you're saying? That the I mean, let me find his room. I've got it here in front of me. The trouble is that the stop is over and the stuff should be over. The traffic stop is over, but the bottom line is it's over, but it's not over, which is not the clearest explanation of a legal basis for ruling. But I think you can look in there and say, you know, there's an acknowledgement in there that the traffic stop is over. Those of the judges were traffic stop is over, but then it's not over because there's an additional second seizure, which is the Cosby analysis. So, you know, the state wants this to be a very simple case. They want it to be Cosby plus absence of mental hall factors equal reversal. But it's not quite that cut and dry. You know, I think that when you look at the factors that I expressed in my brief about, um, you know, the truck was a great emphasis on the fact that the officer brought the defendant back to the car and separated him from his means of leaving the scene. Well, he's he's entitled to do that. Let's face it. The court that during the court or during the course of the traffic stop, the Illinois Supreme Court, the Supreme Court of the United States have acknowledged that police officers control the positioning of and whether or not in a vehicle or out of a vehicle during the course of a traffic stop. That's true for both drivers and passengers. Would you acknowledge that? Yes. So you're trying to bootstrap the officer doing what he's lawfully entitled to do into reasons for finding of prolonged attention. But I think you can also consider that as a factor when you do a Cosby analysis as to whether there was a second seizure. Um, so we don't ignore that fact, even though an officer can do that, but it is part of the analysis. I believe so. That would be my contention. And I see that in part because the trial court here mentioned that specifically specifically said there was no good reason to bring him back to the car. It's his right to do so. Isn't that the kind of second guessing know that the Supreme Court of the United States said trial court should not engage in that we leave to the officer's sound judgment based upon the circumstances at the time. And here's an officer who already suspects criminal behavior. He already has seen six cell phones again, not probable cause, but heightened awareness. And the whole reason the reason we allow police officers to conduct traffic stops in that manner is for their safety. Too many police officers being shot and killed during traffic stops. I agree with that, that there are certainly officer safety concerns, but that was not ever given as a reason for doing this. The trial court said there wasn't a good reason for doing this. And I think you can consider that in your cause. The analysis is the one that was a second seizure. It's not per se illegal. Certainly I would never go there, but I think you could consider that as a factor in conjunction with the fact that here's your driver's license. You're free to go. Wait a minute. Can you come back and answer some more questions? Well, he does. No, he doesn't have him come back. He's already at the back of the car signing ticket. Correct. That's another one of those factual gray areas of where was everybody located at the exact moment that the license was handed back. And when the conversation started, we have to assume that it's somewhere near the front of the officers. They're not a football field away. It's a traffic stop there within feet. The testimony was the defendant was 20 ft from his car and 10 ft from the trailer that he was pulling. Yeah, obviously the driver's side front corner of the squad car. So, but even if you do find that there was no second seizure under Cosby, then you go on to the defendant withdraws consent. And as we've discussed, the record shows that it's a reasonable interpretation in the record, according to the defendant's stop. I want to leave. And before the probable cause was developed through the initial look through the car by the by the defendant. So you don't dispute the fact that if the officer made the observations of the suspected cannabis, then we don't have to concern ourselves with the withdrawal of consent. If that observation was made before the defendant made that communication to wash your way for correct. Yeah, I guess he did. You know, the officer testified that in his training and experience that he recognized that his canvas, he didn't collect it. But to develop probable cause, you know, the site of cannabis in a car would be the case. I recognize that it's probable cause, doesn't it? I'm not aware of. I can't pull the case name up for you. So I would see that point. But I think that's just a little off pretty much. That's first. And just one last quick point. You know, when you're considering whether defendant withdrew his consent, there's also, you know, the question of the written consent form. And, you know, you can consider that as a factor. So there's two factors here that showed withdraw consent. Number one, the actual statements of the defendant, which well, and also his refusal to sign. Well, I think your client said he was never presented with a written. He did. So he was never presented with it. He could not have refused. Okay. Officer recent said he correct. He refused to sign. And I don't recall the exact testimony, but whether it's a department policy to do so or not, I don't recall about that. But either way, even if whoever you believe that race or the defendant, you still have the withdrawal of consent or verbally verbal. The defendant's testimony was that that whole conversation about consent was intermingled with the return of his driver's license, etcetera, signing of the ticket. And it's right away. It's that now we're talking about criminal behavior. Can we look in your car? Correct. I believe that's a fair inference. And, you know, could have been confused. You know, the defendant didn't say I was confused. He just said I didn't see that. But in exchange paperwork, here's your ticket sign. This is your insurance papers back. It might have gotten lost in that shuffle. Should your clients? I mean, he has a relatively extensive criminal history. Should that play any role in what decisions the police officer makes or how he should handle the situation? The crime scene traffic something. I mean, I don't think it goes to the question of withdrawal of consent. I mean, the defendant clearly has a right to withdraw his consent, regardless of any any background. And that's something he probably would have known, even without consulting with his brother, based upon his experience. I don't know what the defendant's knowledge of search and seizure while as I I hate to jump to a conclusion, but just because someone has had prior contacts with the police in the criminal justice system that he's familiar with search and seizure. I read in the briefs that he was convicted of some drug trafficking offense. Yeah, there was indication. It wasn't clear whether it was an arrest or conviction, but it was something involving the E. A. In St Louis. I would ask this court to affirm the judgment of the trial court. Thank you. Thank you. Your honor, generally speaking, the appellee can raise any point, uh, in order to support the judgment on appeal. However, the appellee is drifted a little bit away from the trial court's ruling. In this case, the trial court, in this case, determined that the officer needed it needed to provide a justification for asking the defendant to exit his vehicle before he had the ticket. That was the sole basis of the defendant's motion below. I would submit to you that if you look at the trial court's ruling in its totality, the trial court determined for whatever reason, the defendant had somehow been placed in custody at the time that Raciak asked the defendant to exit his vehicle and signed the ticket. That was the first justification given by the trial court. The trial court's second justification is directly opposite to cause me. It says that once the officer handed the defendant back the ticket, the stop should have been over. That's the second error in the trial court's judgment. The third error in the trial court's judgment is that it was unrelated that the officer Raciak's continued detention of defendant was unrelated to the initial justification to stop. As we pointed out before, that's directly contrary to the Supreme Court's ruling in Cosby. I would submit that for whatever reason, the trial court did not engage in the factual findings that we're customary that we're used to in this case because the trial court thought that it had a Gonzalez rationale for granting the suppress evidence. Unfortunately, that's no longer the law in the state of Illinois. The trial court's ruling was based on a misapprehension of the law and a misapplication to the facts of this case. The defense's attempt to I mean, in the briefing stage, the defense relied on a bunch of cases that were cited or that were decided before Cosby and many that were remanded after Cosby. I would submit that post Cosby, the the officer's behavior in this case was entirely reasonable. Um, this court's decision that getting, for individuals don't, you know, generally remain in traffic scenes in order to engage in a conversation with the officer. Well, that's simply that intuition is just proven by the facts of this case. I mean, generally speaking, absolutely. Individuals tend not to remain in the scene of the traffic stop any longer than they have to. This defendant, however, felt that he had something to prove. He challenged the officer not only to do a search of the car, but then to get a canine to the extent the defendant either was or was not presented a consent to search form, did or obviously did not sign a consent to search form. Those are all facts to be taken within the case. But that all occurred after the defendant had already consented. I don't think that his refusal to sign a consent to search form indicates the withdrawal of consent. In fact, the defendant's limitation on this in this case that the that the canine has searched the car, but the officer couldn't. What about counsel's argument that based upon the timeline given by the officer himself, even though the trial court didn't apparently didn't make this it is likely that the defendant withdrew his consent, at least the search of the vehicle, while still agreeing to the canine snip or canine arriving at the scene before the officer made the observations of the cannabis in the car. That's that that appears to now be the argument that there's not support in the record for that. That's based on the defendant's presumption that he was seized pursuant to Mendenhall prior to that, at the time that the officer asked him to exit the vehicle. I would submit that at that point, I mean, causing clearly dictates that he wasn't. Well, the officer didn't see the cannabis until he began the search, correct? Correct. And the defendant's position is that he withdrew his consent before the actual search began. Well, that I don't I don't think that's borne out. It's certainly not borne out by the defendant's testimony, but it's not borne out by race. The X testimony could focus on the defendant's testimony. Okay. In the defense testimony, he says at the time that race, I can't even back the ticket reset, started interposing that exchange apparently with questions that at some point the defendant had consented to search, but then called his brother. And then, according to the defendant, withdrew his consent to search. The council's point was at the time that the defendants on the phone Raciak is getting the passengers out and frisking them. And Raciak says that took him 10 minutes. Then it's testimony is in a short conversation. Brother says you don't stay. He tells the other officer. That's it. I want to withdraw my consent now, setting aside whether he said, Wait for the dog. Let's assume he just said, I want to withdraw my consent or I want to leave. It's that timeline issue. He's defendant says it was immediate. Raciak says it took me 10 minutes. How do we justify that or get over that? That 10 minute gap? I don't. I don't think that you have to. I think that that was a factual question committed to the trial court to resolve who did not make any factual. I did not make any factual findings in this case. Testimony was telling to stop the search. We want to leave. So if you take from that, the search had already begun. The trial court's analysis in this case, which is what the state is appealing, is that at this point in time, according to the trial court, the seizure began when Raciak approached the defendant, the vehicle and signed the ticket. That's where the trial court's analysis ended. I mean, it went on to talk about Gonzalez rationale, but at that point in time, the trial court never had an opportunity really to address the question of consent to resolve any factual disputes in the testimony because the trial court had already kicked this case prior to the resolution of those questions. I mean, I would I would submit to you as the appellate court. You're, of course, entitled to reread the record and draw inferences, natural, reasonable inferences from the record. I would the reasonable inference to be drawn in this case is that it probably took some time for the officers to get the two passengers out of the vehicle to go ahead and pat them down and cuff them. It couldn't have happened quickly. So to me, just in the common sense of how traffic stops are conducted, I would say that the defense testimony was unworthy of belief on that point. If there are no other questions, the state submits that the trial court's ruling was an error. We asked this court to reverse. Thank you. It will be a recess until 10.